

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JOHN MCFARLAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:13-CV-0131-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant | § | Assigned to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER TO DISMISS

Pursuant to 42 U.S.C. § 405(g), Plaintiff John McFarland seeks judicial review of the Commissioner of Social Security's decision, which denied his applications for a period of disability, disability insurance benefits, and supplemental security income benefits under Titles II and XVI of the Social Security Act. The United States district judge transferred this case to the United States magistrate judge, and all parties consented to the jurisdiction of the magistrate judge.

After considering the pleadings, the briefs, and the administrative record, this Court affirms the Commissioner's decision and dismisses, with prejudice, McFarland's complaint.

### Statement of the Case

Following a hearing on January 22, 2013, an Administrative Law Judge (ALJ) Determined on March 7, 2013, that McFarland was not disabled. Specifically, the ALJ held that McFarland's impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that he had the residual functional capacity (RFC) to perform a full

range of light work with limitations, and that although he was not capable of performing his past relevant work, he was capable of performing other jobs existing in significant numbers in the national economy. The Appeals Council denied review on June 14, 2013. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Factual Background

McFarland filed an application for a period of disability, disability insurance benefits, and supplemental security income on October 24, 2011. (Tr. 22). McFarland claims he became disabled on October 10, 2011 (hereinafter date of onset), due to renal failure, back pain, and knee problems.[1] (Tr. 41, 47-53, 170). Previously, McFarland worked in customer service at a retail store and as a commercial truck driver. (Tr. 42-46, 175, 182, 375). McFarland is a high school graduate with no additional education. (Tr. 42). McFarland obtained a commercial driver's license in 2001 but has since let it lapse. (Tr. 42).

McFarland claims to have a history of bilateral knee problems that required surgery in 1999 on his right knee, and 1992 and 1994 on his left knee. (Tr. 41, 47-53, 174, 180, 243, 249, 257, 375). Prior to the date of onset, Claimant received treatment for his knee problems at Abilene Regional Medical Center (hereinafter Abilene Regional). (Tr. 27, 242). On June 21, 2011, McFarland visited Abilene Regional complaining of knee pain, presenting at a pain level of 4 on a 10 point scale, with onset of symptoms 1-2 days prior. (Tr. 262). Physical examination

---

[1] McFarland inconsistently points to headaches as an additional cause for a finding of disability. During the May 19, 2012, consultative exam, McFarland reported a history of headaches since 1993, with an average reported pain of 10 on a 10 point scale. (Tr. 374). On the March 1, 2012, document appealing a prior disability report, McFarland claimed, for the first time, that his head aches were "very bad." (Tr. 208). McFarland reported to the consultative examiner that his headaches "affect[] his ability to work secondary to difficulty being in bright environments, and difficulty concentrating with a headache." (Tr. 374). Headache was not listed as a disabling impairment at the hearing. (Tr. 41).

revealed "[n]o ligamentous instability," a decreased range of motion secondary to pain, and a "[s]mall amount of soft tissue swelling." (Tr. 263). On June 22, 2011, McFarland revisited Abilene Regional where he was evaluated for a left knee injury. (Tr. 257). McFarland claimed his pain level was a 9 on a 10 point scale, with an onset of symptoms four days prior. (Tr. 257). Physical examination revealed "[n]o ligamentous instability," a normal range of motion "without pain," and only a "[s]mall amount of soft tissue swelling." (Tr. 258). On August 15, 2011, Claimant visited Abilene Regional where he was evaluated for chest pain. (Tr. 243, 249). Physical examination of McFarland revealed that he had "[n]o significant traumatic injuries or tenderness" in his extremities and a "[f]ull range of motion [in] all joints." (Tr. 250). Notably, on McFarland's October 10, 2011, admission to Abilene Regional for renal failure (discussed *infra*), physical examination revealed a full range of motion in his extremities. (Tr. 290, 281). During McFarland's October 17, 2011, visit to Plains Regional Medical Center (hereinafter Plains Regional) for hematuria, a physical examination again revealed a normal range of motion in his extremities. (Tr. 350).

After date of onset, McFarland was treated for renal failure. (Tr. 24, 242, 274). On October 10, 2011, Claimant presented to Abilene Regional with abdominal pain and gross hematuria. (Tr. 274). Onset of symptoms was attributed to an overdose of Naproxen: McFarland ingested "approximately 60 Naproxen tablets over a 48-hour period. . . for management of his chronic back and knee pain." (Tr. 274). McFarland was admitted to the hospital for five days and suffered gross hematuria and a decline in renal function after admission. (Tr. 274). The nephrologist diagnosed McFarland with renal failure, secondary to Naproxen toxicity. (274-75). On October 11, 2011, the nephrologist ordered that McFarland receive hemodialysis to treat his

acute renal failure.[2] (Tr. 277, 304). On the same day, an ultrasound showed McFarland had normal kidneys. (Tr. 317). By October 13, 2011, McFarland's renal failure and gross hematuria seemed to have resolved. (Tr. 275). McFarland was discharged in stable condition on October 15, 2011, after a five day stay at Abilene Regional. (Tr. 274). On October 17, 2011, McFarland presented to the Plains Regional emergency room complaining of hematuria, back pain, and knee pain. (Tr. 28, 346, 350). The physicians concluded his hematuria was a result of the prior Naproxen toxicity. (Tr. 350).

On March 5, 2012, McFarland returned to Abilene Regional complaining of flank pain and trouble urinating. (Tr. 361, 365). Physical examination revealed "pain along bilateral paralumbar area" that was "minimally aggrevated [sic] with movement." (Tr. 366). McFarland's pain reportedly improved with over the counter medication. (Tr. 362). Notably, McFarland had a normal range of motion in all his extremities and tested negative for any chronic kidney disease/renal failure. (Tr. 366, 370). McFarland was discharged the same day in stable and satisfactory condition. (Tr. 366). On April 9, 2012, McFarland returned to Abilene Regional complaining of lower back pain where he was diagnosed with acute sciatica and acute lower back pain. (Tr. 353, 357, 358). Physical examination revealed a "[l]eft straight leg raise positive at 45 degrees. Right straight leg raise negative. Moderate tenderness to palpation [of] lower lumbar spine [and] left paralumbar musculature." (Tr. 358). McFarland was discharged the same day and given several prescriptions to help manage his pain. (Tr. 359).

The Social Security Administration sent McFarland for a consultative examination on May 19, 2012. (Tr. 28, 374). During the consultative examination, McFarland complained of

---

[2] McFarland claims to have received dialysis for a total of three days during his five-day hospital stay. (Tr. 56). Medical records only indicate that dialysis was ordered once, on October 11, 2011. (Tr. 265-335, 277). Progress notes dated October 12, 2011, state "hold off [hemodialysis] today." (Tr. 301). Progress notes dated October 13, 2011, state that no hemodialysis was given that day. (Tr. 298).

kidney failure, knee problems, and headaches as his chief reasons for disability, and mentioned he had some back pain and stiffness during his medical history review. (Tr. 374). At the consultative examination, McFarland reported his pain associated with renal failure at a 10 on a 10 point scale, pain associated with his knees at a 10 on a 10 point scale, and pain associated with headaches at a 10 on a 10 point scale on most days and a 4 on a 10 point scale at the examination. (Tr. 374). McFarland also complained of hematuria and swelling associated with renal failure; pain, swelling, and stiffness that is exacerbated by walking associated with his knees; migraines, nausea, and nose bleeds associated with his history of headaches. (Tr. 374). In his report, the consultative examiner noted that McFarland's "typical daily activities consist of doing things around the house." (Tr. 375). During the physical exam, the consultative examiner found that there was

> No joint swelling, erythema, effusion or deformity. There was a paravertebral tenderness in the left lumbosacral region. The claimant was able to lift, carry and handle light objects. The claimant was able to rise from a sitting position without assistance but had some difficulty getting up and down from the exam table. The claimant was able to walk on heels and toes with difficulty. Tandem walking was abnormal and the claimant could not stand or hop on either foot bilaterally. The claimant could not dress and undress adequately well, but was cooperative and gave good effort during the examination. Range of motion was decreased in the Thoracolumbar: flexion 20 degrees. Range of motion was within normal limits in all other areas including cervical, elbows, shoulders, wrists, hands, hips, knees and ankles/feet. (Tr. 377).

Additionally, the examiner noted that there was no "clubbing, cyanosis, or edema" on Claimant's extremities, and Claimant had an "asymmetric, slow, antalgic, limping gait" but "did not come in with an assistive device." (Tr. 376). McFarland had "no palpable muscle spasms" and muscle strength was largely normal, with minor decrease in left leg extension, and left ankle dorsiflexion. (Tr. 28, 377, 378). Claimant had a decrease in sensation in his left foot and his "straight leg test was positive at 30 degrees on the left." (Tr. 377).

The consultative examiner opined that Claimant had "signs and symptoms consistent

with a lower back problem, either a slipped disc or bone spur," that Claimant had "considerable problems with his gait," and that Claimant was unable to stand on one foot. (Tr. 378). Additionally, the examiner noted that Claimant had "mild limitations with sitting, moderate limitations with standing and moderate to severe limitations with walking due to lower back pain and left lower extremity weakness," that Claimant required an assistive device such as a cane with regards to long distances, that Claimant has "moderate limitations with lifting and carrying weight due to low back pain and left lower extremity weakness," that Claimant has limitations on "bending, stooping, crouching, [and] squatting" but that Claimant "will be able to perform these [actions] occasionally due to low back pain and left lower extremity weakness." (Tr. 378).

X-rays of McFarland's left knee taken at the consultative examination revealed evidence of prior anterior cruciate ligament tear. (Tr. 380). There was "no joint space narrowing, [n]o significant joint effusion, . . . [and] [n]o significant arthritic changes . . . apparent within the joint." (Tr. 380). A July 2012 radiograph of McFarland's lumbar spine revealed only minimal degenerative disc disease and facet arthritis. (Tr. 383).

On August 5, 2012, Dr. Amita Hedge, M.D., completed a physical RFC assessment and concluded that McFarland could: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of at least 2 hours in an 8 hour work day; sit for a total of about 6 hours in an 8 hour work day; push and/or pull without limitation, other than as shown for lift and carry; climb ramps or stairs occasionally, but never climb ladders, ropes, or scaffolds; balance frequently; stoop occasionally; kneel frequently; crouch occasionally; and crawl frequently. (Tr. 385-88). Dr. Hedge noted that McFarland recovered well from the renal failure, x-ray of back only shows minimal degenerative changes, x-ray of knee shows only a history of anterior cruciate ligament repair but no joint space narrowing and no joint effusion. (Tr. 391).

At the hearing, the vocational expert, Ms. Shelly Eike opined that a hypothetical individual with McFarland's age, education, and RFC could not return to his past relevant work. (Tr. 62). However, Eike testified that there are jobs listed in the national economy at the light or sedentary level that the hypothetical individual can perform. (Tr. 62). Specifically, the hypothetical person could perform work at the light level such as a small-parts inspector, certain cashier positions, or various unskilled positions. (Tr. 63). Eike also testified that the positions described at the light level would allow the hypothetical individual to sit/stand as he pleased: "the jobs that I described are the types of jobs that would allow this individual to either sit or stand while performing the tasks." (Tr. 64).

## Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). Additionally, a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505, 416.911. "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe

impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to Steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). To determine whether the Commissioner's decision is supported by substantial evidence, the Court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the Claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter,* 64 F.3d 172, 174 (5th Cir. 1990); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the

Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

### Discussion

At issue on appeal is (1) whether substantial evidence supports the ALJ's RFC finding that McFarland could perform a full range of light work with limitations; (2) whether the ALJ properly considered the Consultative Examiner's (CE) opinion in determining McFarland's RFC; (3) whether the ALJ erred in failing to ask the vocational expert (VE) his basis for concluding that the proposed jobs could accommodate a sit/stand option; and (4) whether the ALJ failed to make a specific finding regarding McFarland's headache pain. (Pl.'s Br. 3-11).

After considering the record as a whole, the ALJ followed the five-step sequential evaluation process and determined that McFarland was not disabled within the meaning of the Social Security Act. (Tr. 22-32). At Step 1, the ALJ found that McFarland did not engage in substantial gainful activity at relevant times. (Tr. 24). At Step 2, the ALJ found that McFarland "had the following 'severe' combination of impairments: obesity, minimal degenerative changes to the lumbar spine, a history of bilateral knee surgery, and acute renal failure." (Tr. 25). At Step 3, the ALJ found that these impairments failed to meet or equal a listed impairment under the applicable regulations. (Tr. 25-26). Before proceeding to Steps 4 and 5, the ALJ assessed McFarland's RFC and determined that he retained the ability to

> lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; sit throughout an 8-hour workday; and stand or walk (individually or in combination)

> 3 to 4 hours in an 8-hour workday; and otherwise perform a full range of light work, except: he can frequently balance; he can only occasionally stoop, kneel, crawl, or climb ramps or stairs; he can only infrequently crouch (usually not over once or twice an hour); and he cannot climb ladders, ropes, or scaffolds.

(Tr. 26). At Step 4, the ALJ determined that McFarland's impairments prevented him from performing his past relevant work. (Tr. 30). At Step 5, the ALJ found that McFarland's impairments did not prevent him from performing other work that exists in significant numbers in the national economy, and thus, McFarland was not disabled. (Tr. 31).

A. **Substantial Evidence Supports the ALJ's Residual Functional Capacity Finding**

McFarland argues that substantial evidence does not support the ALJ's RFC finding of light work with limitations. (Tr. 4-8). Instead, McFarland claims the ALJ should have found that he is only capable of sedentary work. (Pl.'s Br. 6). For the reasons set forth below, this Court holds that there is substantial evidence in the record to support the ALJ's RFC finding.

The ALJ is responsible for determining the claimant's RFC. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990); 20 C.F.R. § 404.1546. Moreover, the determination of a claimant's RFC is reserved for the ALJ alone. 20 C.F.R. § 404.1547(d)(2); SSR 96-6p, 1996 WL 374180 (Jul. 2, 1996). To evaluate a claimant's RFC, the ALJ must consider the limiting effects of all the claimant's impairments, even those that are not severe. 20 C.F.R. § 404.1545(e). The ALJ may also consider evidence such as observations of limitations by the claimant's treating or examining physicians, psychologists, family, friends, or other persons. 20 C.F.R. § 404.1545(a). Such evidence is considered along with the medical evidence to determine the extent of a claimant's limitations. *Id.* Still, an ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56. An ALJ may rely on a nonexamining physician's assessment when the assessment is based upon a careful evaluation of the medical

evidence and does not contradict those of the examining physician. *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)). Accordingly, the ALJ considers medical opinions, together with the other evidence, to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(b).

Contrary to McFarland's assertion, the ALJ's RFC determination is supported by substantial evidence. In support of his argument, McFarland cites to Exhibits 8F and 9F of the record and the fact that the ALJ granted them "very significant evidentiary weight." (Tr. 384-92, 30). Exhibit 8F is the RFC assessment by Dr. Amita Hedge, MD.[3] (Tr. 384-91). Exhibit 9F is the medical evaluation/case analysis by Christine Vu, a Disability Determination Services (DDS) employee.[4] (Tr. 392).

McFarland takes issue with the fact that Dr. Hedge checked the box indicating that he can stand "at least 2 hours in an 8-hour work day," but later opined that he can "stand/walk 3-4 Hrs." (Pl.'s Br. 4; Tr. 385). McFarland argues that this discrepancy is grounds to find that the ALJ did not have substantial evidence to support his RFC determination. (Pl.'s Br. 5). McFarland further states that because Vu opined that "[claimant] will have a sedentary RFC," that the ALJ should follow suit and adopt Vu's RFC opinion. (Pl.'s Br. 4-6). McFarland further reasons that "[t]he DDS opinion that the ALJ hinged his decision on is for a sedentary RFC, not light, because it involves standing only three (3) to four (4) hours." (Pl.'s Br. 6).

Additionally, McFarland quotes a portion of Ruling 83-10 to show that the ALJ erred in his RFC finding, (Pl.'s Br. 6), yet omits the part that states "at the sedentary level of exertion,

---

[3] Specifically, Dr. Hedge placed McFarland's exertional limitations at lifting/carrying 20 pounds occasionally, lifting/carrying 10 pounds frequently, standing/walking at least 2 hours in an 8-hour workday, sitting about 6 hours in an 8-hour workday. (Tr. 385). Dr. Hedge also stated that McFarland could stand/walk for 3-4 hours. (Tr. 385).
[4] DDS employee Vu notes that the opinions of Dr. Vorhies, Dr. Saller, and Dr. Hedge were not given great weight in her assessment. (Tr. 392). Vu also notes that McFarland will have a sedentary RFC. (Tr. 392).

periods of standing or walking should generally total *no more than* about 2 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 (Jan. 1, 1983) (emphasis added). Moreover, the RFC opinion by Dr. Hedge indicates that McFarland can stand or walk "*at least* 2 hours in an 8-hour workday." (Tr. 385) (emphasis added). The words "at least" indicate that McFarland can stand or walk a minimum of two hours per day but does not preclude standing or walking for a greater amount of time.

As outlined above, a final RFC determination is reserved for the ALJ alone. The ALJ has sole discretion in weighing the medical evidence and determining the claimant's RFC. The ALJ is not bound to accept the findings of Ms. Vu, nor is he bound to accept the findings of Drs. Hedge, Saller, or Vohiers. Here, the ALJ considered all the medical evidence (subjective and objective) and opinions in the record, accorded them weight as he saw fit, and determined that McFarland was capable of performing a light range of work with limitations. Thus, this Court holds that substantial evidence supports the ALJ's RFC determination.

**B.    The ALJ Properly Considered the Consultative Examiner's Opinion in Determining McFarland's RFC**

"The ALJ as factfinder has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). Weighing the evidence and determining the relative weight to be given to the pieces evidence is reserved for the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001); *Gray v. Astrue*, No. 1:09-CV-0101-BI, 2011 WL 856941, at *5-6 (N.D. Tex. 2011). The ALJ also has considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455-56. (5th Cir. 2000). The ALJ is "not required to accept any medical evidence *in toto*, rather,

[the ALJ's] RFC determination is based upon the evidence as a whole." *Gray*, 2011 WL 856941, at *6.

McFarland argues that the ALJ impermissibly cherry-picked the CE's (Dr. Saller) opinion. (Pl.'s Br. 8). This argument is meritless. The record indicates that the ALJ considered all the evidence contained therein. The ALJ also thoroughly evaluated Dr. Saller's findings and explained any deviation from Dr. Saller's opinion. (Tr. 29-30). The ALJ is certainly not obligated to accept Dr. Saller's findings *in toto*, especially when there is evidence in the record that contradicts those findings. Because this Court has already determined that there is substantial evidence to support the ALJ's RFC determination, and because the Court finds that the ALJ properly weighed the evidence on record, this Court holds that the ALJ did not improperly consider Dr. Saller's opinion.

C. **The ALJ Did Not Err by Failing to Ask the Vocational Expert about a Foundation for the Sit/Stand Options**

The Fifth Circuit has stated that hypothetical questions to a vocational expert need only include the limitations the ALJ finds the record supports. *Materson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). In *Johnson v. Astrue*, the Fifth Circuit held that the Commissioner did not fail to meet his burden at Step 5 by not including a sit/stand option because the ALJ did not find that a sit/stand option was required. 291 Fed. App'x. 548, 551 (5th Cir. 2008). "To the extent that there is any implied or indirect conflict between the [VE's] testimony and the [Dictionary of Occupational Titles (DOT)]. . . the ALJ may rely upon the [VE's] testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). As the court in *Carey* artfully stated:

> [C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the

conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Id.* at 146-47.

McFarland argues that the ALJ erred by not questioning the VE about her basis for concluding that the jobs available to McFarland could accommodate a sit/stand option. (Pl.'s Br. 7-8). The ALJ did not make a specific determination that McFarland required a sit/stand option. (Tr. 26). Moreover, the ALJ's hypothetical questions to the VE included the limitations the ALJ found were supported by the record. Thus, there is no requirement that the ALJ pose any questions to the VE about sit/stand options, and there is no requirement that the ALJ question the VE about her basis for concluding that the stated jobs could accommodate a sit/stand option. Even if there is an implied or indirect conflict between the VE's testimony and DOT, the ALJ properly relied on the VE's testimony. Therefore, this Court declines McFarland's request for remand on this issue.

### D. The ALJ did not Err in Failing to Make a Finding About McFarland's Headaches

McFarland's final argument is that the ALJ erred in failing to make a finding regarding his headaches even though the CE noted that McFarland suffered from headaches since 1993. (Pl.'s Br. 10). For the reasons below, this Court rejects this contention and finds that the ALJ made no error.

The Fifth Circuit has stated that a failure to make a severity finding at Step 2 is not reversible error when an ALJ continues with the sequential evaluation process. *Herrera v. Comm'r of Soc. Sec.*, 406 Fed. App'x. 899, 903 (5th Cir. 2010) (citing *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987)). In *Herrera*, the court rejected claimant's arguments that remand was warranted because the ALJ failed to determine the severity of certain impairments. *Id.* In so doing, the court stated that the

> case did not turn on a finding that Herrera's impairments were not severe at step two; rather, the ALJ concluded that Herrera was not disabled because, despite his severe impairments, he retained the [RFC] to do other work. Therefore, the ALJ's failure to assess the severity of Herrera's [impairments] at step two is not a basis for remand.

*Id.*

Generally, subjective complaints of pain must be corroborated by objective medical evidence. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a); 20 C.F.R. § 404.1529(b); *see also Selders v. Sullivan*, 914 F.3d 614, 618 (5th Cir. 1990). Simply put, the claimant's pain "must be linked to some underlying medical condition." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Moreover, a finding of disability is supported when there is evidence that shows a claimant was able to work, despite the allegedly disabling impairments. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Fraga v. Bowen*, 810 F.2d 1296, 1305, n.11 (5th Cir. 1987).

In the instant case, the ALJ acknowledged that McFarland complained of headaches but did not explicitly make a severity finding at Step 2. (Tr. 25, 28). The ALJ then proceeded through the sequential evaluation process and ultimately found that McFarland was not disabled. (Tr. 22-32). Thus, as in *Herrera*, the ALJ's disability determination in this case did not depend on the severity findings of McFarland's headaches.

McFarland reported to the CE that he has suffered from headaches since 1993 and his pain was a 10 on a 10 point scale, on average. (Tr. 374). In a 2012 disability determination appeal, McFarland—for the first time—claimed that he suffered from debilitating headaches. (Tr. 208). The remainder of the record contains no evidence—subjective or objective—as to debilitating headaches. Moreover, McFarland's work history shows that his headaches, although characterized as quite severe and debilitating, did not prevent him from working between 1993 and the date of onset. (Tr. 42-46, 175, 182, 375). For these reasons, this Court rejects McFarland's contention that the ALJ erred in failing to make a specific finding regarding the

headaches.

## Conclusion

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** and McFarland's complaint is **DISMISSED** with prejudice. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**SO ORDERED** this 26th day of August, 2014.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE